J-A13004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN CHRISTOPHER SPERL | |
| Appellant | No. 2065 EDA 2016 |

Appeal from the Judgment of Sentence April 15, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005172-2013

BEFORE:  LAZARUS, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED SEPTEMBER 29, 2017**

Sean Christopher Sperl appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after a jury convicted him of homicide by vehicle[1] and accident involving death or personal injury.[2] After careful review, we affirm.

On April 22, 2013, Sperl, Ryan Benner, Ted Stoler and Ryan Petrille attended a Philadelphia Phillies baseball game at Citizens Bank Park; during the game, Sperl consumed several alcoholic beverages, including beer and whiskey.  Afterward, Stoler drove Sperl, Benner and Petrille back to his home

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  75 Pa.C.S.A. § 3732.

[2]  75 Pa.C.S.A. § 3742.

in Landsdale, Montgomery County. At approximately 11:30 p.m., Sperl, Benner and Petrille left Stoler's home to drive to a nearby gentleman's club; Sperl was driving the vehicle. After discovering the club was closed, the three men detoured to a convenience store before continuing to a different gentleman's club in Harleysville, Montgomery County. Sperl was still driving the vehicle on the way to Harleysville; Benner sat in the front seat and Petrille sat in the back seat. Shortly after 12:00 a.m., on April 23, 2012, the vehicle Sperl was operating struck a telephone poll while traveling at approximately 80 miles per hour. The collision separated the front of the vehicle from the rear, with the front of the vehicle coming to rest approximately 100 feet from the telephone pole and the rear portion coming to a stop 100 feet away from the telephone pole opposite of the front portion.

After the collision, Sperl and Benner exited the front portion of the vehicle; Sperl did not remain at the scene of the accident. Ryan Petrille did not survive the collision. At approximately 12:12 a.m., police responded to a radio dispatch of a one-car accident. At approximately 3:30 a.m., during the course of the investigation, police received a report of a disturbance at a residence at 31 Sugar Hill Lane, located approximately 100 to 200 feet from the collision scene. The residence at 31 Sugar Hill Lane reported that Sperl had knocked on the door after awakening inside a shed located on the property. When police arrived, Sperl indicated that he thought he might have been in a crash that killed someone. Sperl was visibly injured, his eyes were glassy and bloodshot, and he had a strong odor of alcohol coming from his

person and breath, but police did not perform a field sobriety test for safety purposes. After being transported to a local hospital, Sperl's blood was drawn at 4:44 a.m., which revealed a blood alcohol content of 0.175 percent.

On July 10, 2013, Sperl was charged with homicide by vehicle, accident involving death or personal injury, homicide by vehicle while driving under the influence,[3] driving under the influence (DUI)[4] and other related summary offenses, including careless driving[5]. A jury trial commenced on November 2, 2015. On the morning of the trial, over Sperl's objection, the Commonwealth was granted permission to amend the homicide by vehicle charge to include careless driving as the underlying Motor Vehicle Code violation. The original criminal information charged driving under the influence as the underlying offense. The jury convicted Sperl of all but the DUI-related offenses. On April 15, 2015, the trial court sentenced Sperl to an aggregate sentence of three to six years' imprisonment. Sperl timely filed a motion for reconsideration of sentence and for a new trial, which the trial court denied by order on June 20, 2016. Sperl timely appealed and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Sperl raises the following issues:

> 1. Did the court err by allowing the Commonwealth to amend count 3 of the information, homicide by vehicle, on the first day

---

[3] 75 Pa.C.S.A. § 3735.

[4] 75 Pa.C.S.A. § 3802.

[5] 75 Pa.C.S.A. § 3714.

of testimony in violation of Rule 564 and causing substantial prejudice to [Sperl]?

2. Did the court err by refusing [Sperl's] motion to dismiss the Commonwealth's case pursuant to Pa.R.Crim.P. 600 after the Commonwealth failed to bring [Sperl] to trial [within] 365 days?

3. Even when viewing the evidence in the light most favorable to the Commonwealth[,] was the evidence lacking as a matter of law to sustain a conviction for accidents involving death or bodily injury as there was insufficient evidence tending to show that [Sperl] failed to remain at the scene of the accident?

4. Did the court err in sentencing by failing to consider the rehabilitative needs of [Sperl] or the gravity of the offense, instead imposing a lengthy state sentence for careless and negligent conduct?

Brief of Appellant, at 5.

Sperl first claims that the trial court substantially prejudiced his defense by allowing the Commonwealth to amend the homicide by vehicle charge. Specifically, Sperl avers the trial court erred in allowing the Commonwealth to change the underlying offense of his homicide by vehicle charge from DUI to careless driving.

Pennsylvania Rule of Criminal Procedure 564 provides as follows:

> ***The court may allow an information to be amended when there is a defect in form***, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. Rule 564 (emphasis added). "The purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the

- 4 -

defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006). Accordingly, this court must determine

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

***Id.*** (citation omitted). In determining whether an amendment is prejudicial, we consider the following factors:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Commonwealth v. Mentzer***, 18 A.3d 1200, 1203 (Pa. Super. 2011). In short, in reviewing an order granting a motion to amend charges, we must look to determine whether the defendant is fully apprised of the charges against him. ***See Commonwealth v. Picchianti***, 600 A.2d 597 (Pa. Super. 1991). Where charges involve the same basic elements and arise out of the same factual situation as the crimes specified in the amended charges, a defendant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results. ***Id.***

Here, the trial court granted the Commonwealth's request to amend the charge of homicide by vehicle, which provides, in relevant part, as follows:

> **(a) Offense.--**Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a). To establish the offense of homicide by vehicle the Commonwealth must establish only that: (1) the defendant deviated from standard of care established by the underlying traffic regulation; (2) the defendant knew or should have known he engaged in conduct claimed to be in violation of the underlying traffic violation; and (3) a death occurred, and that death was at the very least a probable consequence of defendant's violation of the underlying traffic violation. ***See Commonwealth v. Richardson***, 452 A.2d 1379 (Pa. Super. 1982). Initially, Sperl's criminal information reflected DUI as the underlying offense for homicide by vehicle. Generally, "an individual may not drive . . . a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving." 75 Pa.C.S.A. § 3802(a). However, on the first day of Sperl's jury trial, the Commonwealth requested to change the underlying offense from DUI to careless driving. Any person who drives a vehicle in careless disregard for the safety of another person is guilty of careless driving, which is a summary offense. ***See*** 75 Pa.C.S.A. § 3714.

Here, the Commonwealth sought to remedy a defect in the criminal information; the underlying offense for homicide by vehicle was incorrect. The Commonwealth's amendment of the charge did not serve to change the factual scenario supporting the charges of homicide by vehicle, DUI or careless driving. Sperl had been placed on notice of the underlying charge of careless driving, as it was included in the original criminal information and arose out of the same factual situation. *Picchianti*, *supra*. Further, the Commonwealth's request did not deprive Sperl of ample notice and/or preparation. Sperl was charged with careless driving in a separate count on July 10, 2013, more than two years before his jury trial, and thus, Sperl had reasonable notice that careless driving was a Motor Vehicle offense that the Commonwealth could potentially use to prove homicide by vehicle. *See Commonwealth v. Wilkinson*, 420 A.2d 647 (Pa. Super. 2008) (criminal complaint which informed defendant that she was charged with homicide by vehicle and gave details of incident and also charged defendant with driving under influence gave defendant fair notice of Commonwealth's theory that her driving under influence caused death). Additionally, amending Sperl's charges to reflect a different underlying Motor Vehicle Code violation for homicide by vehicle did not fundamentally alter the elements of the crime the Commonwealth had the burden of proving. The offense underlying a charge of homicide by vehicle has no bearing on the elements necessary to prove it. In fact, it is not necessary at all for the Commonwealth to separately charge a violation of the motor vehicle code to establish the elements of homicide by

vehicle. *See Commonwealth v. Gbur*, 474 A.2d 1151 (Pa. Super. 1984).

In light of the foregoing, we discern no error in the trial court's granting of the

Commonwealth's request to amend Sperl's charges.

Next, Sperl claims the Commonwealth failed to comply with

Pa.R.Crim.P. 600, and thus the trial court erred in denying his motion to

dismiss. Rule 600 provides, in relevant part, as follows:

> Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(3). Our standard and scope of review in reviewing a Rule

600 issue are both well settled.

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the

- 8 -

administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . ., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa. Super. 2011) (citations omitted). The Commonwealth bears the burden of proving, by a preponderance of the evidence, that it acted with due diligence throughout the proceedings. *Commonwealth v. Kearse*, 890 A.2d 388, 393 (Pa. Super. 2005).

We embark on our review of the instant Rule 600 claim by calculating Sperl's mechanical run date. *See Commonwealth v. Lynn*, 815 A.2d 1053, 1056 (Pa. Super. 2003) (mechanical run date is date by which trial must commence under Rule 600). The Commonwealth charged Sperl with the foregoing crimes on July 10, 2013, and thus, Rule 600 required his trial begin no later than July 10, 2014, absent periods of delay not attributable to the lack of due diligence by the Commonwealth. Here, Sperl filed a motion to dismiss under Rule 600 on August 20, 2015, 771 days after his mechanical run date. On September 18, 2015, the trial court held an evidentiary hearing on Sperl's Rule 600 motion. The Honorable Gary S. Silow aptly summarized the findings of the evidentiary hearing as follows:

[F]ollowing the filing of the criminal complaint, defendant waived his arraignment and trial counsel entered his appearance on August 12, 2013. Defendant filed a petition for writ of habeas corpus on August 28, 2013. The motion was denied on September 10, 2013. The intervening 13 days are not attributable to the Commonwealth. [Sperl] subsequently executed a Rule 600 waiver on October 29, 2013, and the pre-trial conference [(PTC)] scheduled for that day was continued. Pre-trial conferences again were continued at defendant's request on February 10, 2014, and April 8, 2014, at which time the case was placed on the Call of the Trial List [(COT list)]. The matter appeared on the COT list on June 5, 2014, and was continued by defense request. Defense counsel subsequently filed a petition to withdraw as counsel on June 25, 2014. The petition was withdrawn July 2, 2014. [Sperl] then waived Rule 600 on August 7, 2014, when the matter again appeared on the COT list. Similar listings were continued by defense request on October 9, 2014, and December 1, 2014. The combined period of time counted against [Sperl] from the original Rule 600 waiver until December 1, 2015, is 398 days.

The case subsequently was transferred to the undersigned, who issued an Order on April 6, 2015, scheduling a five-day trial to begin on September 9, 2015. Two days later, defense counsel again filed a petition to withdraw as counsel on April 8, 2015. Defense counsel remained in the case following the advice of the Public Defender's Office that defendant did not qualify for representation. This court subsequently issued an Order on September 8, 2015, rescheduling the trial until November 2, 2015. The Order also granted defendant 45 days to obtain a cell phone expert due to recently disclosed evidence from the Commonwealth and counted that 45 day period against the Commonwealth. Based upon the above, even without including the period of delay occasioned by the second petition to withdraw filed by defense counsel, approximately 559 days are not attributable to the Commonwealth.

Trial Court Opinion, 9/21/16, at 7-8.

The trial court attributed 559 days to Sperl, whose trial began on November 2, 2015, and thus, only 212 days attributable to the Commonwealth had elapsed. Additionally, the trial court found no evidence that demonstrated

- 10 -

a lack of due diligence by the Commonwealth in bringing the case to trial. **Kearse**, **supra**. Accordingly, it found no Rule 600 violation occurred. In light of the foregoing, we discern no abuse of discretion by the trial court in denying Sperl's motion to dismiss.

Sperl next claims the evidence of record was insufficient to prove Sperl failed to remain at the scene of the collision, and thus, lacking as a matter of law to sustain a conviction for accident involving death or personal injury.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact–finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact–finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Williams**, 744 A.2d 745, 751 (Pa. Super. 2016).

Section 3742 of the Motor Vehicle Code provides, in part, as follows:

> **(a) General rule.--**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give

- 11 -

information and render aid).[6] Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3742(a).

_____

[6] 75 Pa.C.S.A. § 3744 provides, in relevant part, as follows:

**(a) General rule.**--The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information and upon request exhibit the license and information relating to financial responsibility to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if requested by the injured person.

**(b) Report of accident to police.**--In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (a) and no police officer is present, the driver of any vehicle involved in the accident after fulfilling all other requirements of section 3742 (relating to accidents involving death or personal injury) and subsection (a), in so far as possible on his part to be performed, shall forthwith report the accident to the nearest office of a duly authorized police department and submit to the police department the information specified in subsection (a).

75 Pa.C.S.A. § 3744.

Sperl crashed a vehicle into a telephone pole while traveling at approximately 80 miles per hour; the collision fatally injured Petrille. Sperl did not attempt to render Petrille aid, notify authorities or seek help from nearby persons. In fact, Sperl fled the area and did not report the accident until after police responded to the disturbance at 31 Sugar Hill Lane. The evidence of record supports the jury's finding that Sperl violated section 3751(a).

Lastly, Sperl avers the trial court abused its discretion by failing to consider Sperl's rehabilitative needs when it fashioned his sentence.

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015), quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Sperl filed a timely motion to reconsider and modify sentence on April 25, 2016, which the trial court denied; on June 6, 2016, Sperl timely appealed. Sperl, in complying with Rule 2119(f), argues the trial court abused its discretion in sentencing by failing to consider his rehabilitative needs and/or the gravity of his offense. *See* Brief of Appellant, at 12-13. Thus, Sperl has raised a substantial question for our review. *See Commonwealth v.*

*Hyland*, 875 A.2d 1175, 1183 (Pa. Super. 2005) (indicating substantial question raised when issue raises question of whether trial court sentenced in aggravated range without considering mitigating circumstances). However, we find this issue to be meritless.

The trial court sentenced Sperl to a standard-range sentence of 1-2 years' imprisonment for homicide by vehicle and a consecutive aggravated-range sentence of 2-4 years' imprisonment for accident involving death or personal injury. The standard-range sentence for accident involving death or personal injury is 9-16 months' imprisonment. Where the sentencing court had the benefit of a presentence investigation (PSI) report, it is presumed that it was aware of the information regarding the defendant's character and weighed those considerations with mitigating statutory factors. *See Commonwealth v. Boyer*, 856 A.2d 149 (Pa. Super. 2004). A trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). The record clearly reflects that the trial court, in fashioning Sperl's sentence, considered Sperl's presentence investigation report, *Boyer*, *supra*, his personal background and circumstances and the evidence of the circumstances of the offense. N.T. Sentencing, 4/15/16, at 118-121. Thus, the trial court did not abuse its discretion in fashioning Sperl's sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date: 9/29/2017*