652 A.2d 378

**COMMONWEALTH of Pennsylvania**

v.

**Larry G. KELLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 27, 1994.

Filed Dec. 28, 1994.

George B. Stegenga, Washington, for appellant.

Ralph C. Warman, Dist. Atty., Uniontown, for appellee Com.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

CIRILLO, Judge:

Larry G. Kelley appeals from a judgment of sentence entered in the Court of Common Pleas of Fayette County following his conviction of driving under the influence of alcohol. 75 Pa.C.S.A. § 3731(a)(1). We reverse.

On October 23, 1992, at approximately 1:30 a.m., Sylvia Panzone, an emergency medical technician, was driving on Tippecanoe Road when she came across a one-vehicle accident.

A car had landed in an embankment on the side of the road; its headlights were on. Panzone called the fire department and returned to the scene. She observed Kelley in the front seat of the vehicle slumped over the steering wheel. The passenger door was locked, and the driver's door was against the embankment.

An ambulance arrived and Dan Hall, one of the ambulance personnel, punched out the passenger window. After the door was opened, both Panzone and Hall smelled a strong odor of alcohol. Panzone stated that, as she got closer to Kelley's face, the alcohol odor was overwhelming. Hall also smelled a strong odor of alcohol on Kelley when the two were in the ambulance together.

Trooper David G. Fordyce arrived at the scene at approximately 2:15 a.m. He described Tippecanoe Road as a two lane, hilly, winding, country road with a 55 mile per hour speed limit. He stated that at the location of the accident, the westbound lane curves to the right, and that if one failed to negotiate that curve, his or her vehicle would hit the embankment. Trooper Fordyce noticed a strong odor of alcohol in Kelley's vehicle and found a beer bottle on the floor in front of the passenger seat. Trooper Fordyce arrived at Brownsville Hospital just before 3:00 a.m., at which time he spoke with Kelley. While questioning Kelley, Trooper Fordyce smelled a strong odor of alcohol, observed bloodshot eyes, and noted that Kelley had slurred and incoherent speech. Kelley admitted to Trooper Fordyce that he was driving the vehicle and that he was involved in an accident. At approximately 3:10 a.m., blood was drawn from Kelley for a blood alcohol test, the results of which revealed a .18% blood alcohol content (BAC). Trooper Fordyce testified that, based on his eight and one-half years of experience with DUI cases, Kelley was under the influence of alcohol to a degree which rendered him incapable of safe driving.

Kelley admitted to drinking three or four twelve ounce beers that evening at his brother's home. He also attested that, while at his brother's, he got into a fistfight and was hit

on the left side of his head with a whiskey bottle, which rendered him unconscious. He vaguely remembers people kicking and hitting him before he blacked out for a second time. Kelley estimated that he left his brother's home between 10:00 p.m. and 10:30 p.m. On the way home, he averred that he had extreme pain in his head, and felt nauseated and shaky. He attributed his difficulty in driving to his head injuries. He did not remember running into the embankment or talking to the trooper. According to Kelley, his jaw was broken and he needed reconstructive surgery. It was not determined whether that injury was a result of the car accident.

Kelley was charged with 75 Pa.C.S.A. §§ 3731(a)(1) and (a)(4).[1] A suppression hearing was held, at which time the Commonwealth agreed to the dismissal of the 75 Pa.C.S.A. § 3731(a)(4) charge, and consented to proceed only with the 75 Pa.C.S.A. § 3731(a)(1) charge. A jury trial ensued, and Kelley was found guilty of section 3731(a)(1). Kelley was sentenced to a term of imprisonment of not less than sixty days and no more than twelve months. This appeal followed.

Kelley raises the following issues for our consideration:

(1) Was there sufficient evidence to convict Kelley of a section 3731(a)(1) violation, and was the trooper's opinion based on conjecture and not on fact?

(2) Was the use of the blood test in the instant case prejudicial to Kelley, and should not the motion *in limine* have been granted?

(3) Was the sentence for a first time offender excessive where there appeared to be no reason for a sentence above

---

1. **(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

   (1) While under the influence of alcohol to a degree which renders the person incapable of safe driving;

   &ast; &ast; &ast; &ast; &ast; &ast;

   (4) While the amount of alcohol by weight in the blood of the person is 0.10% or greater[.]

   75 Pa.C.S.A. §§ 3731(a)(1), (4).

the minimum? [2]

■ For purposes of clarity, we will address Kelley's second issue first. Kelley claims that the use of his blood test results in evidence was highly prejudicial, and that the test results should have been suppressed. Prior to trial, Kelley filed a motion to suppress the results of the blood test, pointing out that the time period between the time he operated his vehicle and the time of the blood test was more than three hours. A hearing was held on this matter. During this hearing, the Commonwealth agreed to dismiss the 75 Pa. C.S.A. § 3731(a)(4) charge, and indicated that it would proceed with the section 3731(a)(1) charge. Unfortunately, for reasons uncertain, there is no official transcript of the suppression hearing. We have only the order from that suppression hearing as part of the record. The order, issued by the Honorable William J. Franks, provides:

AND NOW this 14th day of October, 1993, pursuant to agreement by counsel for the Commonwealth and counsel for the defendant at the hearing on a Motion to Suppress, it is hereby Ordered and Directed that the driving while under the influence charge against the defendant at Case No. 419 of 1993 which is filed pursuant to 75 Pa.C.S.A. Section 3731(a)(4) is hereby dismissed. The Commonwealth may still proceed against the defendant on the charge of driving while under the influence filed pursuant to 75 Pa.C.S.A. Section 3731(a)(1).

Kelley argues that when the District Attorney agreed to pursue only the section 3731(a)(1) charge, for which a blood test result is not necessary, the District Attorney was, in effect, agreeing with the relief sought, *i.e.*, suppression of the blood test result. We must disagree. While the trial court was remiss in not making its determination more clear, the plain reading of the order indicates that it did not suppress the blood test results; rather, it only dismissed the section 3731(a)(4) charge. In fact, after the order was issued, Kelley filed a motion *in limine*, once again attempting to preclude

2. Due to our disposition of this case, we do not reach Kelley's third issue.

the use of the blood test results. The motion was denied by the trial court.

■ Kelley contends that, in any event, it was error to admit the blood test results at trial, and that doing so was prejudicial. Again, we must disagree. There exists both statutory and case law authority ruling that blood alcohol content test results are admissible in section 3731(a)(1) cases. Specifically, it has been determined that, "[I]n a § 3731(a)(1) prosecution, so long as the defendant's blood alcohol level exceeds .05%, the Commonwealth may introduce evidence regarding that defendant's blood alcohol level." *Commonwealth v. Kemble*, 413 Pa.Super. 521, 526, 605 A.2d 1240, 1242 (1992) (citing *Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988)); *see* 75 Pa.C.S.A. § 1547(d)(2), (3).[3] "[W]here a defendant is only charged with section 3731(a)(1), a .10% test result is but one piece of evidence to be considered in deciding whether the person was under the influence." *Commonwealth v. Sloan*, 414 Pa.Super. 400, 411, 607 A.2d 285, 290 (1992).[4]

3. **(d) Presumptions from amount of alcohol.**—If chemical testing of a person's breath, blood or urine shows:

\* \* \* \* \* \*

(2) That the amount of alcohol by weight in the blood of the person tested is in excess of 0.05% but less than 0.10%, this fact shall not give rise to any presumption that the person tested was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not under the influence of alcohol. This provision shall not negate the provisions of section 3731(i).

(3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731.

75 Pa.C.S.A. § 1547(d)(2), (3).

4. Section 3731(a)(1) and section 3731(a)(4) have been determined to be separate and distinct offenses. *Commonwealth v. Crum*, 362 Pa.Super. 110 n. 2, 523 A.2d 799 n. 2 (1987) (citing *Commonwealth v. Slingerland*, 358 Pa.Super. 531, 518 A.2d 266 (1986)). The Pennsylvania Supreme Court has recently ruled that once the Commonwealth has established that a driver's BAC reflects an amount above .10%, the Commonwealth has made a *prima facie* case under section 3731(a)(4). *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529 (1994). The defendant is then permitted to introduce expert testimony to rebut the Commonwealth's *prima facie* evidence. *Id.* This rule has not been extended to a BAC

▬▬▬ Although we have concluded that the trial court did not err in admitting Kelley's blood alcohol test results, we find that even though Kelley's BAC revealed a .18%, the evidence adduced at trial was not sufficient to sustain a conviction for a violation of section 3731(a)(1). In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Jarman*, 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). *See also Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9 (1994). Furthermore, it matters not whether the appellant finds a witness's testimony lacking in credibility; such matters are solely within the province of the jury as trier of fact and, as such, will not be assailed on review by this court. *Swerdlow, supra.*

▬▬▬ In order to establish Kelley's guilt under 75 Pa. C.S.A. § 3731(a)(1), the Commonwealth was required to prove

result above .10% introduced in a section 3731(a)(1) case. Our Supreme Court distinguished the facts in *Yarger* from those in *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992), and *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), where it was held that the Commonwealth did not prove beyond a reasonable doubt that either driver's BAC exceeded the proscribed limit while they operated their vehicles based on the lapse of at least one hour between the time when the drivers were operating their vehicles and at administration of the blood tests, the small amount by which the test results surpassed the proscribed level, and the Commonwealth's expert witnesses' testimony that each drivers' BAC may have been below .10% before the test was given. The *Yarger* Court recognized that the majority decisions in *Jarman* and *Modaffare* did not address the expert testimony issue; *Yarger*, however, as stated above, did address the issue.

that (1) Kelley was the operator of a motor vehicle, and (2) that while he was operating the vehicle, he was under the influence of alcohol to a degree that made him incapable of driving safely. *See* 75 Pa.C.S.A. § 3731(a)(1); *Commonwealth v. Sharpe,* 388 Pa.Super. 301, 302–303, 565 A.2d 496, 497 (1989). Our review of the record and pertinent case law indicates that the Commonwealth has not met its burden. Kelley admitted to driving the vehicle at the time it was involved in the accident, thus satisfying the first element of the crime. The Commonwealth, however, has not proven that, *at the time he was operating the vehicle,* Kelley was so impaired as to violate the statute.

■ We do not dispute the Commonwealth's proposition that intoxication is a matter of common observation and lay persons are permitted to tender their opinion on the issue. *See In the Interest of Wright,* 265 Pa.Super. 278, 401 A.2d 1209 (1979); *see also Commonwealth v. Boerner,* 268 Pa.Super. 168, 407 A.2d 883 (1979) (intoxication is not a condition outside the realm of understanding or powers of observation of ordinary persons). A police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated. *Commonwealth v. Bowser,* 425 Pa.Super. 24, 624 A.2d 125 (1993). While these are valid propositions, they are not persuasive when applied to the facts of the instant case.

The Commonwealth and the trial court rely upon *Commonwealth v. Neiswonger,* 338 Pa.Super. 625, 488 A.2d 68 (1985), for its determination that a police officer, if he has observed a defendant's appearance and acts, is competent to give his opinion as to the defendant's state of intoxication and to his ability to drive safely. *Id.* at 629, 488 A.2d at 70. In *Neiswonger,* the appellant was stopped for speeding by one officer and asked to perform sobriety tests. During the tests, a second police officer (the testifying officer) arrived, observed that the appellant was performing the test poorly, smelled alcohol on the appellant's breath, and noticed that the appellant was staggering. Even though the second officer did not see the appellant driving, this court decided he was able to

make a determination as to the appellant's intoxicated state and ability of the appellant to drive safely.

Thus, while it is true that an arresting officer need not actually see a defendant operate a motor vehicle to make a determination of intoxication, in this case, such an observation is considerably weakened by the time frame involved. Here, rescue workers smelled alcohol near Kelley when they came upon the accident scene. No one observed the manner in which Kelley was driving before the accident. Trooper Fordyce, who arrived at the accident scene at 2:15 a.m., was not able to determine the time of the accident. He admitted that it could have taken place at midnight or some other hour. It was not until approximately 3:00 a.m. that Trooper arrived at the hospital. There, he observed Kelley on a table in the emergency room, smelled an odor of alcohol, observed bloodshot eyes, and opined that Kelley had trouble speaking. On cross-examination, Trooper Fordyce admitted that Kelley was suffering from serious head injuries and a broken jaw, and conceded that he could not determine whether the slurred speech and bloodshot eyes were due to intoxication or the injuries. However, Trooper Fordyce testified, over objection, that based on his observations, Kelley was intoxicated to a degree which rendered him incapable of safe driving. At about 3:10 a.m., Kelley's blood test revealed a BAC of .18%.

The Commonwealth has proved only that Kelley had an odor of alcohol about him and that his BAC was .18% *at least* one hour and forty minutes after the accident. There is nothing in the record to indicate how long Kelley had been unconscious in his automobile. Arguably, judging from the time Kelley estimated leaving his brother's home, the accident could have occurred as early as 11:00 p.m. The facts proven do not lead inescapably to the inference that Kelley was intoxicated to a degree which rendered him incapable of safe driving *at the time he was operating his vehicle.* The Commonwealth did not prove when the accident occurred. This is the only point at which Kelley's impairment is relevant and, since the Commonwealth did not establish even an approximate time for the accident, it was impossible to conclude

beyond a reasonable doubt that Kelley violated section 3731(a)(1) at the critical time period. There are simply too many variables and not enough corroborating facts in the evidence to support the verdict.

A verdict may not be supported where the jury must guess at any essential fact in favor of a party having the burden of proving it. *Cuthbert v. Philadelphia,* 417 Pa. 610, 209 A.2d 261 (1965). The evidence established here, even when viewed in the light most favorable to the Commonwealth, proves only that Kelley was intoxicated at the time of the investigation, not at the time of the accident. The fact that the Commonwealth did not establish a time period for the occurrence of the accident required the jury to guess as to an essential element of the Commonwealth's case, that is, whether Kelley was under the influence of alcohol to a degree to render him incapable of safe driving *while* he was operating the vehicle.[5] Accordingly, we must reverse Kelley's conviction.

Judgment of sentence reversed.

---

5. The instant case can be distinguished from those cases involving section 3731(a)(1) where a time of driving/time of accident has been established to some degree, thus making it much easier to find sufficient evidence to support a conviction. *See Commonwealth v. Mahaney,* 373 Pa.Super. 129, 540 A.2d 556 (1988) (Cirillo, J. dissenting) (sufficient evidence established the time at which appellant's one-car accident occurred to support a conviction under section 3731(a)(1) where an officer observed appellant visibly intoxicated, debris remained in a routinely patrolled highway suggesting the accident had happened immediately before the officer arrived, and a blood alcohol test revealed a .17% BAC); *see also Commonwealth v. Hogans,* 400 Pa.Super. 606, 584 A.2d 347 (1990); *Commonwealth v. Fairley,* 298 Pa.Super. 236, 444 A.2d 748 (1982); *Commonwealth v. Stout,* 288 Pa.Super. 471, 432 A.2d 609 (1981) (similar holdings).