J-S10017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYNE NATHANIEL BOOTH | : | |
| | : | |
| Appellant | : | No. 1064 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 24, 2020
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000099-2019

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 01, 2021**

Shayne Nathaniel Booth appeals from the judgment of sentence entered following his bench-trial convictions for driving under the influence of a drug or combination of drugs—impaired ability ("DUI"), possession of a controlled substance, and possession of drug paraphernalia. ***See*** 75 Pa.C.S.A. § 3802(d)(2); 35 P.S. §§ 780-113(a)(16), (32).[1] Booth argues the Commonwealth failed to prove he was in physical control of the vehicle while impaired. We affirm.

Pennsylvania State Trooper Seth Sprague testified that in November 2018 he responded to the Penns Village Shopping Center after receiving a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court also found Booth guilty of the summary offenses of registration and certificate of title required and careless driving. 75 Pa.C.S.A. §§ 1301(a), 3714(a).

report that a male driver and female passenger of a gray sedan in the parking lot were arguing and the male struck himself in the head. N.T., 10/1/19, 4.[2] Trooper Sprague arrived at the shopping center approximately two minutes after receiving the call. *Id.* at 5. While he was en route, dispatch informed him that the sedan had moved to a different spot in parking lot. *Id.*

When Trooper Sprague arrived, the sedan was in a parking space. *Id.* at 6. He could not recall whether the engine was running, the keys were in the ignition, or the headlights were on. *Id.* at 16. Booth was in the driver seat and a female was in the passenger seat. *Id.* at 5. Booth had glassy, bloodshot eyes and appeared fatigued. *Id.* While they were speaking, a hypodermic needle fell from Booth's pocket. *Id.* at 7. Booth said he had previously used the needle to inject fentanyl into his arm. *Id.*

Trooper Sprague also observed a cotton swab, which is used when injecting heroin, and glassine bags, which are drug packaging materials. *Id.* at 7-8. The Trooper also observed that Booth's pupils were restricted and he had track marks on his arm. *Id.* at 8. He then asked Booth if there was anything in the vehicle that he needed to know about, and Booth responded that there was a firearm in the vehicle. *Id.* Trooper Sprague administered field sobriety tests and determined that Booth "displayed signs of impairment as a

_____

[2] Trooper Sprague and Booth testified at a hearing on the motion to suppress evidence. The parties agreed to a stipulated bench trial, using the testimony from the hearing.

result of the test[s] and all [his] observations." *Id.* at 9. A search of the vehicle uncovered drugs and additional drug paraphernalia. *Id.* at 12.

Trooper Sprague testified that Booth told him that he and his girlfriend had left Greencastle, Pennsylvania between approximately 9:00 and 9:30 a.m. and were attempting to purchase heroin in the parking lot. *Id.* at 9. When they arrived, the couple started arguing because they were "withdrawing and their dealer was taking too long." *Id.* Both Booth and his girlfriend told Trooper Sprague that they drove to the second parking spot to be more inconspicuous. *Id.* Booth told Trooper Sprague that the last time he injected fentanyl was approximately 10:00 p.m. the previous night. *Id.*

Booth also testified, stating that he arrived at the parking lot between 9:00 and 9:30 a.m. and was there for approximately 45 minutes before Trooper Sprague arrived. *Id.* at 30-31. He was there to purchase fentanyl, which he did when he arrived at the parking lot. *Id.* at 31. He testified that after he and his girlfriend purchased the fentanyl, they prepared it and moved to a more secluded section of the parking lot before injecting it. *Id.* Booth testified he moved the car 15 to 20 minutes before Trooper Sprague arrived. *Id.* at 37. He injected the fentanyl before Trooper Sprague's arrival, but after he moved to the second spot. *Id.* at 31. Booth testified that the keys were not in the ignition when the trooper arrived. *Id.* at 33. Booth agreed that the trooper found the drugs and drug paraphernalia in his vehicle, including wet cotton, which, Booth conceded, indicates recent drug use. *Id.* at 35-36.

The court found Booth guilty of DUI, possession of a controlled substance, and possession of drug paraphernalia. In July 2020, it sentenced Booth to 13 to 48 months' incarceration followed by three months' probation. Booth filed a timely notice of appeal.

Booth's brief asserts two sufficiency claims:

> I. Whether the Commonwealth's evidence was sufficient to prove, beyond a reasonable doubt, that [Booth] was "driving", "operating", or in "actual physical control of a motor vehicle" while intoxicated or substantially impaired, when [Booth] was parked in a public parking area, with no engine running, no keys in the ignition, no lights illuminated.
>
> II. Whether the Commonwealth's evidence was sufficient to prove, beyond a reasonable doubt, that [Booth] had consumed controlled substances prior to "driving", "operating" or being in "actual physical control of a motor vehicle".

Booth's Br. at 5.

These issues differ from those Booth raised in his Pa.R.A.P. 1925(b) statement. Although the first issue in his Rule 1925(b) statement goes to sufficiency of the evidence, the second issue challenges the denial of his suppression motion:

> a. [T]he Court committed an error of law in finding guilty of Count 3-"Driving under the Influence of Drugs Impaired Ability" in that the evidence of impaired ability to drive a vehicle was and is insufficient to sustain a verdict of guilty beyond a reasonable doubt.
>
> b. [T]he Court committed error of law and abuse of discretion in denying [Booth]'s suppression motion. The court erroneously concluded that the issue of whether [Booth] was in actual physical control of his vehicle is only a jury question and should not be decided by the suppression court. The decision on whether to suppress

- 4 -

> evidence, based on a claim of insufficient probable cause to arrest Defendant for DUI, necessarily depends on the suppression court initially deciding the existence of probable cause on all of the material elements of DUI. Actual physical control of a vehicle is one such necessary element that must be decided prior to a decision on the sufficiency of probable cause.

Pa.R.A.P. 1925(b) Statement, 9/2/20, ¶ 2. His first issue challenged the sufficiency of the evidence regarding whether he had an impaired ability to drive, but his second issue maintained that the lower court erred in denying his suppression motion without determining whether he was in physical control of the vehicle.

On appeal, Booth frames both issues as sufficiency issues in his questions presented and argues the Commonwealth did not prove that he was intoxicated or substantially impaired while driving, operating, or in actual physical control of an automobile. Booth's Br. at 8. He argues that Trooper Sprague testified that he did not see Booth drive or operate the motor vehicle, and that the trooper could not recall whether the engine was running, the keys were in the ignition, or the headlights were illuminated. Further, Trooper Sprague testified to signs of recent drug use, such as syringes, cotton balls, metal spoons, and baggies. Booth argues that he was not in "actual physical control" of the vehicle, as the testimony established nothing more than that he was sitting in a vehicle while intoxicated and does not establish he exercised control over the vehicle. *Id.* at 11-12. He claims that the trial court erred in concluding that his last drug use was the previous night, noting Booth testified he had injected fentanyl after he moved the car, but before Trooper

Sprague arrived, and that the corroborating evidence supports a finding of recent drug use. *Id.* at 12. Booth further contends that the Commonwealth presented evidence of two opposing propositions and it therefore proved neither. *Id.* (quoting *Commonwealth v. Crompton*, 682 A.2d 286 (Pa. 1995)). Booth also claims the court was "speculating as to [his] intoxication from an admitted use of Fentanyl 12 hours before." *Id.* at 13.

Booth waived his argument that the Commonwealth failed to present sufficient evidence to find that he operated, drove, or was in actual physical control of the vehicle while impaired because he did not include it in his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Even if he had not waived it, we would conclude it lacked merit, as the Commonwealth presented sufficient evidence to prove all elements of DUI beyond a reasonable doubt.

"When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." *Commonwealth v. Green*, 204 A.3d 469, 484 (Pa.Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* at 484-85 (quoting *Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*)).

Subsection 3802(d)(2) prohibits driving, operating, or being in "actual physical control of the movement of a vehicle" by an individual who is "under the influence of a drug or combination of drugs to a degree which impairs [one's] ability" to do so safely. 75 Pa.C.S.A. § 3802(d)(2). "The term 'operate' requires evidence of actual physical control of the vehicle to be determined based upon the totality of the circumstances." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa.Super. 2008) (*en banc*). Courts review various factors to determine "whether a person had 'actual physical control' of an automobile" including whether the motor was running, where the vehicle is located, and "additional evidence showing that the defendant had driven the vehicle." *Id.* (citation omitted). Further, "[t]he Commonwealth can establish that a defendant had 'actual physical control' of a vehicle through wholly circumstantial evidence." *Id.* (citation omitted). In addition, "a police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." *Id.* (quoting *Commonwealth v. Kelley*, 652 A.2d 378, 382 (Pa.Super. 1994)).

Considered in its totality, the evidence was sufficient evidence to prove that Booth was impaired by a controlled substance when he drove, operated, or was in physical control of the vehicle. Although Trooper Sprague did not observe Booth drive the vehicle, the Commonwealth can prove its case with circumstantial evidence. Here, Trooper Sprague testified that he arrived approximately two minutes after hearing the dispatch regarding the argument and that, while he was en route, dispatch informed him that the car moved;

Trooper Sprague observe that Booth had glassy, bloodshot eyes and he showed signs of impairment from the field sobriety tests; and Booth told Trooper Sprague he last used drugs the night before and drove to the parking lot that morning. The trial court was free to not credit Booth's testimony that he used fentanyl after he moved the car to the second parking space, and to believe Trooper Sprague's testimony and Booth's statements to him, which were enough to establish Booth was in control of the vehicle while impaired.

Further, *Crompton*, relied on by Booth, is inapposite. There, a state trooper testified at a suppression hearing that, while at the door waiting to execute a search warrant, he saw an individual remain in a chair and not move to answer the door when the trooper knocked and saw that same individual move toward the kitchen when he knocked. 682 A.2d at 289. The Commonwealth presented no evidence to explain the inconsistency. If the individual had remained seated, the testimony would have established an exception to the knock and announce rule. If the individual had moved toward the kitchen, it would have established a separate exception to the rule. The Pennsylvania Supreme Court concluded that, because this testimony was "mutually exclusive," it "failed to establish either exception." *Id.* No similar inconsistent and "mutually exclusive" testimony or evidence exists in this case. Booth's claims that the evidence did not suffice to establish that he was in "actual physical control" of the vehicle, or that he had consumed controlled substances before doing so, are meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/01/2021